All rise. The judges of the United States Court of Appeals for the Ninth Circuit. Hear ye, hear ye. All persons having business with the Honorable of the United States Court of Appeals for the Ninth Circuit will now be on the air. Give your attention and you will be heard. God save these United States and this Honorable Court. Good morning, ladies and gentlemen. Thank you for your patience and your understanding. These things do occur. So we'll go ahead with the oral argument today in the United States v. Jayde Evans and Davis. And Judge O'Scanlan will hear the recording of this and will mark it submitted at the end of the argument. So please go ahead. Good afternoon and may it please the Court, my name is Nick Veith and I represent Mr. Jayde Evans. I was talking to co-counsel and I will take the first six minutes and then reserve the final four for him. The first issue that I'd like to address is the burden of proof issue. I think that is the most important thing to decide today. The burden of proof as applied incorrectly put the onus on the defense. The issue that we saw in going through the state law to determine whether or not we had an affirmative defense was at the onset to show compliance. And because the burden of proof is a state issue and because compliance is entirely a state issue, we propose that upon an initial or threshold showing that one of the affirmative defenses, whether it's in MUCA or whether it's in a common law defense, whether or not we can show that initial showing that our clients would be able to provide that affirmative defense. Let me stop you for a second, Mr. Veith. You're in a federal court and you're seeking to get an injunction from a district court judge. Why shouldn't we simply apply the standard burden of proof as plaintiff you were seeking to get an injunction? The plaintiff has the burden of proving every element of the normal winter four element case, including probability of success. On that, Your Honor, we have a preponderance standard. And that preponderance standard is more likely than not. That's right. And so in looking at that and then also looking at the previous holding that this court, in the previous opinion that this court held, showing strict compliance by a preponderance standard is the tussle here. Because that sets up an impossibility for the defense. In looking at our clients. Well, is your problem really with the strict compliance language of McIntosh? Because that we're bound by, aren't we? The language of McIntosh is compliance. So on remand, and I'm looking at the last page, and the order that this court handed down to Judge Nielsen was, quote, remand with instructions to conduct an evidentiary hearing to determine whether appellants have complied with state law. But in the first paragraph under Roman numeral IV, it says, by which we mean that they strictly complied with all the relevant conditions imposed by state law. And who has the burden to show that is the issue. Right. But it seems, well, so that was my question. It seems like you're trying to do two things. So one is who has the burden and whether it's a preponderance standard because you're seeking an injunction. And then I guess the other thing is what is it that you have to prove? We would have to prove that one of the affirmative defenses would apply. And then that puts it back onto the government to show you either an administrative Why is it that rather than just that, why is it one affirmative defense instead of that the operation or these individuals were actually in compliance with the state law requirements? Any of the affirmative defenses because there is, you know, we only have the affirmative defenses to rely upon. So anyone can be prosecuted. And then you utilize whether it's an affirmative defense within MUCA or whether it's an affirmative defense under common law. And for our But why do we have any reason to think that Congress intended to stop prosecutions where the defense was some common law defense that had nothing to do with medical marijuana law? Could you repeat that? So, I mean, you have like an argument that entrapment, I think, is an affirmative defense under common law. But that has nothing to do with medical marijuana law. It seems that the rioters' purpose was to support the State's decisions about medical marijuana. That doesn't — I have no reason to understand why you're arguing that Congress would have been trying to help a State enforce its entrapment common law. Your Honor, I look at it as the rioter is there to protect States and their implementation of their medical marijuana laws. To just look at the medical marijuana laws in a box or under MUCA is inappropriate because if my client were to be prosecuted at the State level, he would have every affirmative defense available to him to present to a State jury. I think it is true — Is there a legislative history of this rioter that suggests that Congress was trying to help the States enforce all their common law? Not the common law, but there are multiple examples. Actually, it is in Excerpt of Record, I believe it's number two, Your Honor, where several of the Senators — and I'll look this up when I take a seat — several of the Senators were trying to keep the Department of Justice out of the State's way. But out of the State's way as to medical marijuana specifically, right? Correct. But in the implementation or the argument is that by the Department of Justice continuing to meddle with the State's ability to implement, we should be able to employ every defense. Did Congress say that? That's not what the rioter reads. It's to prevent such States from implementing their own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana. That doesn't talk about anything other than the specific State laws on those four subjects. And, Your Honor, and I guess I would advance that the implementation of medical marijuana in Washington employs all sorts of laws, whether it's administrative, whether it is, you know, in a traditional judicial setting. There are going to be, you know, different regulations. So it's not just under, in our example, MUCA. It would be all sorts of different administrative laws. You're running out of time. Tell us what State laws other than MUCA you were talking about. Any type of affirmative defense. Give me some. So in our example, it would be reliance upon counsel. There was an attorney that advised that the grow was completely legal. There was also a defense where the power company was notified that they were going to be needing a lot of power because they needed that power to operate a medical marijuana grow. There was, and I know I named several in my briefing, but those are just, you know, two simple examples. So there are problems here with the individual compliance. Do you have any State defenses that would speak to those problems with the case? My client's individual compliance? So my client complied with every rule within MUCA. He, there is not one example that the government's going to be able to give you. Well, the district court didn't think that. The district court used the illegality of the owners to install basically a strict liability standard upon the, my client was a trimmer. He didn't have the ability. But that's not how I read. I read the district court to decide that the smoking that the two defendants did was not authorized individually even aside from the rest of the operation. And that is not illegal under MUCA. You can use your medicine and trim marijuana. If you are a qualified patient. Correct, Judge. There's no evidence that they were qualified patients other than the statement, I think, by Davis that Davis was a qualified patient, which was not. There was evidence, Your Honor. My client testified that he was a qualified patient, that he met with the doctor, and then the doctor gave him a green card. And the judge didn't choose to believe your patient. Correct. Your client. Correct, Your Honor. And there was also evidence from other co-defendants that indicated that they had their green cards while they were there. The other issue is the declarations that were provided by the owners before they were forced to take their Fifth Amendment rights. And those declarations outlined that they did indeed have all of these green cards in their possession, and that this was a collective garden where people could. But that goes to the whole operation. On the issue of whether each of the defendants had a valid card presented to the district court to justify the smoking that they individually did, I had this question earlier and I don't think I've gotten an answer about whether any of your State law defenses would help you. Your State affirmative defenses that are not related to medical marijuana would speak to that issue. But again, it's a preponderant standard, Your Honor. If we can get over that 51 percent threshold by my client's testimony, by the testimony of the other defendants, or by the declarations provided by the owners, that's where this standard that the district court employed was an error. Because what the district court did was up that standard to strict compliance. We can't show strict compliance with a preponderant standard. It rubs up against each other because the judge, Judge Nielsen, wanted us to prove strict compliance by a preponderance. So if you had been strictly in compliance, you could prove it, right? Correct. But if they weren't, then why should they be able to get an injunction? Because we were shut down by the government because they would not give us the opportunity to cross-examine or at least examine the owners, which we believed would have established that they were in strict compliance. As individuals for their individual smoking? Yes. What do you think you would have been able to show in that way? Well, the judge also, in their individual smoking, the evidence that was provided from my client was that he was in possession of a medical marijuana card. But he didn't produce it until much later, right? So, I mean, that's a problem that has nothing to do with the other owners or anyone. That's his problem. It definitely is his problem, Your Honor. But he was given that card in 2011. This was six years later that we're supposed to be able to produce this. He couldn't until his mother ended up finding it under his bed. So that was, and remember, it's a preponderance. It's not, you know, beyond a reasonable doubt. And so I have testimony from my client. I have testimony from other defendants. I have testimony, or not testimony, but declarations from the owners that indicated that they were, everything was completely legal within that operation. All right. I think you've run over your time. We'll give you your four minutes. Good afternoon, Your Honor. David Miller on behalf of Bryce Davis. Judge, judges, excuse me, Your Honors. In my opinion, Mr. Davis and the other individual here were employees of this grow. They had no control over it. They had no ability to change anything. They really didn't know what was going on in the matter. Now, under Brown, which we cited in the brief, the number of plants didn't matter. And. What was Mr. Davis's evidence of his individual compliance? Well, he didn't have to comply with MUCA, Judge. He was an employee. The people that owned the grow had to comply with MUCA. My client had to show up from 8 to 5 and trim marijuana on an hourly basis. That was his job. He had a job. Does he have any obligation to find out whether the operation is compliant? I don't believe you do, Judge. Any more than you would have an obligation to find out, say, if this building met code, you work here. My client was given a job. He showed up from 8 to 5 every day and got paid. That was what he did. That was all he did. But if you're going to prevent a Federal prosecution for something that's illegal under Federal law, why shouldn't you at least need a reasonable belief that you're working somewhere that's compliant with State law? He did have a reasonable belief, and I'm glad you asked that, Judge. He did have a reasonable belief. And we should take a look at the declarations. You notice that they were shown medical cards. Now, you didn't have to post the medical cards. There were some maybe misunderstandings under the law, but at the time that this took place, you did not have to post your medical cards. My client was shown medical cards. He was told that it was legitimate. They talked to an attorney before they had this done. The power company, again, knew that this power was going for medical marijuana. It was an outside grow. It was, I guess, open and notorious, you could say, for lack of a better word. They weren't trying to hide this. What about his own smoking? His own smoking is an employment issue, and I'm glad you asked that, too, Judge. It's an employment issue. If I catch my employee smoking marijuana at work, I fire her or him. That's an employment issue. But it's also a Federal law issue and potentially a State law issue. So, I mean, in order to be able to smoke legally under State law, you need to have a card and authorization, and then Federal law is going to defer to that. So what is the evidence that he was legally smoking under either set of law? He probably wasn't legally smoking marijuana, but that doesn't mean that he is conspiring to grow 1,000 plants. That means he smokes. Kennedy. But that's not charged. It charges possession with intention to distribute. Well, that's both. Exactly. Possession, and he's working in a distribution facility. He's working. You don't smoke 1,000 marijuana plants, Judge. You smoke a little bit of marijuana. And he said he smoked it once. I'm not talking about the 562 plants which exceed the individual limits for both providers and for patients. Actually, Judge, under Brown, that does not exceed. Under State v. Brown. We're talking about his individual lack of proof that as a smoker, he was a patient. Under State v. Hansen, Judge, and I'm sorry we didn't cite this, but this is a 138 Washington App 322. You don't have to provide anybody. You don't have to show anybody your card until you are asked. You have to provide proof to the district court judge that you qualify for the exemption. No one asked him if he had a medical card. I don't believe they did anyway, Judge. But wouldn't it have been something he should have brought to court if he had one, when there was a hearing about whether he was in compliance? Even if he wasn't a medical smoker, Judge, if he smoked marijuana that was a violation of his employment conditions, he was employed by these people. What their duty was to do at that time was to fire him and not let him come back because he violated the employment conditions. This isn't a workman's comp case or even an employment discrimination case. This is a case where you're seeking to enjoin the Federal Government from following a criminal statute. We are, Judge. We're asking that based upon the fact that, as my co-counsel's argument and my argument, my argument basically that he was an employee of these individuals. What does that have to do with his possession? This Court has many times in the past found that people that were employees could not be held to the employer's standard, and that's what I'm asking this Court to do. All right. Thank you very much. Thank you, Judge. Good afternoon, Your Honors. May it please the Court, my name is Tim Holmes. I'm an assistant U.S. attorney from Spokane here on behalf of the government. So one thing that we're not talking about here this morning is whether the marijuana grow itself complied with Washington law, and I think that the defense isn't arguing that. The Court noted in its order that nobody was seriously arguing that, and in fact the Court made that comment several times during the hearing, that the defense really isn't arguing anymore that the grow was compliant. So we're talking about a noncompliant marijuana grow, and the defendants want to argue that what the Court really had to decide was the level of knowledge of the noncompliance that the individual defendants had. In other words, their argument comes down to, my lack of knowledge that the grow was not compliant is compliance in essence. But what if they, I mean, they say that they got advice from a lawyer. What if they also tried to look at all the cards and counted them and thought there were enough and asked the employer, are you in compliance, and did everything that someone reasonably could to figure out whether they were in compliance and thought that they were? Would that get them past the overall operation when they're a low-level employee? Well, those aren't the facts in this case. So if the Court's asking whether or not a defendant can ever show that their lack of knowledge, I think it really goes to the issue of guilt or innocence at the trial stage, not to the issue of whether they were. But why would it? I mean, there has to be a determination of whether the prosecution is going to be enjoined at all. And for a low-level employee, it's a little bit unclear to me how they would ever prove. Now, we have individual compliance issues here, too, but when we're just thinking about what the law should be about this, I'm not sure how an individual employee, if they had a reasonable belief, and you may say they didn't in this case, but in general, for the law in general, if they had a reasonable belief that the operation as a whole was compliant, what else can they do when they're trying to use this rider? Well, here's my response. And I understand the concern. But prosecution in that instance doesn't prevent the State from implementing its legal system because we're talking about a non-legal operation. So we're really talking about here the equitable issues and issues relating to whether they would be guilty before a jury, ultimately. So I don't think that ---- But would any of the issues of State law compliance be before the jury? I mean, I would have thought eventually when the prosecution proceeds, the only question before the jury is a Federal law question about whether you are selling marijuana or growing and selling marijuana, not any of the State law stuff. That's true. But we're talking about here beyond that where the defense is trying to assert common law defenses or ---- But could you do that in a Federal prosecution if it's not enjoined at the outset? It depends on what the defense is. I mean, I can't understand how you could. If you could explain why that would be relevant. If the case is not enjoined, I'm not sure why the State medical marijuana laws come in at all anymore once the prosecution proceeds. Yeah. I'm talking about other common law defenses that they might want to assert. If they want to assert that they're not a member of the conspiracy, that they don't have sufficient control for the government to prove its elements with regard to that, that's what I'm talking about. But if the grow itself is not compliant with State law, it doesn't hinder the State from implementing its system by prosecuting it. And I think that's the specific issue here. But I think we're getting off on a tangent because, in fact, the Court did consider whether they individually had notice and sufficient notice and sufficient involvement to be culpable here. But didn't the district court turn that analysis on their individual compliance, not on the overall operation? It did. And I think that that shows that the Court went above and beyond in the sense that the Court didn't just stop with saying, well, the grow is completely uncompliant. I mean, you essentially have two felons who are on supervision running a commercial marijuana operation, and it's the exact thing I believe that the Washington legislature wanted to prevent when they implemented all of these different standards and criteria. So the defense was allowed to present information about their individual knowledge or lack of knowledge, and the Court considered that. And what the Court determined was, number one, the defendants were aware of the scale of this grow. They were aware of that feature of it. And although Defendant Evans said that he hadn't gone into the grow rooms themselves, he knew that they were growing marijuana in the garage, that there were two greenhouses built specifically for that purpose, that it was large enough to employ four people day in and day out trimming. And there was testimony from Mr. Magana that the defendant, Mr. Davis, had actually been in the grow room, two grow rooms in the garage, and helped bring the marijuana out for the harvesting of it. He personally constructed both grow rooms. He constructed both greenhouses. He had seen inside the greenhouses. Defendant Evans, even if he hadn't been inside the greenhouses, said that he was aware that they had marijuana in them because you could see the silhouette of the plants at certain times, depending upon the lighting. So they were aware of the scale of the grow, that it far exceeded the ‑‑ that the grow was of a character that exceeded the plant limit under the law. Well, I'm not sure how ‑‑ I mean, the district court said that they did not have access to the full extent of the grow or knowledge regarding the paperwork related to qualifying patients or designated providers. So how do they ‑‑ if they didn't have access to the paperwork, how would they know that it exceeded the amount that they were allowed to grow? Because as a provider, you can still only have so many plants. As a collective garden, you can still only have so many plants. So the maximum number of plants they could have had under the collective garden  other than it just being a commercial, standard commercial grow, but even if you accepted that as a possibility, it still was 45 plants total. Even if they had valid cards for, say, 100 patients or 1,000 patients? Yes. So there's no way to have any operation that ever grows more than 45 plants? Under the law as it existed at that point in time, the only way you could have more plants was if you had a specific ‑‑ you were not ‑‑ you were compliant in all other areas, and then you had a specific directive from a doctor saying, I need X amount of plants for my treatment, which isn't relevant here at all. But how do we know that if they didn't have access to the paperwork? I mean, I know that's sort of theoretical, but in theory isn't it possible that there was paperwork to justify more plants? Well, I don't think that there's anything in the record here that suggests that there was any serious discussion of that or any serious thought about that. What they knew was that there were ‑‑ was that it was a very large grow that far exceeded the plant limit in the statute and that there was nothing exceptional that indicated ‑‑ because you can't ‑‑ you can only be a provider to one patient at a time, and it's not like ‑‑ and you can only do that once within a 15‑day period. So everything was tailored to limit the size and scale of these grows. The other thing is it was clearly a commercial operation. Mr. Davis had an interest in the crop, in the sale of the crop, and that was clear from the record. He was very upset when the lower greenhouse was burglarized because that was cutting into his interest, although ultimately they became apparently hourly, paid hourly. They did not collectively seek advice from a counsel. The testimony about counsel is very unclear, and it's basically just someone said they talked to an attorney. So no information about ‑‑ from the attorney or no information about what information was given to that attorney. As far as sharing the marijuana, which the district court clearly focused on, the testimony was that the person operating the grow put that marijuana out for people to use. That's how this grow operation was run. It was like a daily bowl was put out, and people could use it, and Mr. Magana said they all used it, and both of these defendants clearly used it. Even if you have a medical marijuana card, you can't just ‑‑ it allows certain things, but it doesn't just ‑‑ neither Mr. Doyle nor Mr. Kiniston were providers for any of these trimmers, so they were just taking that marijuana and converting it to their own use, which is prohibited under the statute, and I think the court focused on that as well. So the court looked at the grow. The grow is totally out of compliance, and they also looked at the individual conduct of these defendants, looked at what they knew, and I think concluded, based on its understanding of the law, that these defendants did not strictly comply with Washington State medical marijuana laws and that the prosecution was not enjoined, or not barred, I should say. Mr. Vease, we'll give you a couple of minutes for rebuttal if you'd like that. In my previous argument, I did indicate that I would point and direct the court to a couple of exhibits, and it's also in response to what the government just indicated. First off, on excerpt of record 484, that's a declaration of Doug Hyatt. Mr. Hyatt is a lawyer out of Seattle, and he goes into detail exactly how he would defend this case, this matter, if it were brought before the state. The other issue is that my client, Jade Evans, had a medical authorization to possess and grow marijuana. That is excerpt of record number 5. And also, very importantly, and in regard to this plant count, the owners of the operation filed two declarations, and I would point the court to excerpt of record page 510. In that declaration, this individual, Mr. Doyle, one of the owners, says specifically, some doctors specify the number of plants on their authorization. Mine stated 99 plants. So that doctor told Mr. Doyle, because he had to consume the marijuana, he had to reduce it down, he couldn't smoke it, so he had to use more marijuana than just 15 plants or 45 plants. So just one person, one authorization was for 99. And so, again, Your Honor, I told you I would point those out for the record, and I did, if you have any questions for me, but I think that is important to highlight those two or three excerpts. All right. Mr. Miller, did you want to say a couple of words? All right. Then the matter, unless there are some more questions. May I simply say, Judge Bea, that I want to apologize to my colleagues and to counsel for being late. I can assure you I got up at 5.30 this morning for a 7.30 flight, which would have gotten me to the courthouse by 10 o'clock, but the flight was delayed for three and a half hours because of San Francisco weather. So I can assure counsel that I will listen to the entire oral record, and actually we now have it on video, so I can actually see it on video. And, of course, I've already, like my colleagues, I've already read the briefs and done all the prep. All right. Thank you very much. Court is adjourned. The matter is submitted. All rise. Hear ye, hear ye. All persons having acted in the interest of the Honorable, the United States Court of Appeals for the Ninth Circuit, will now depart. For the support for this session, I now stand adjourned.
judges: O'scannlain, Bea, Friedland